## THE PASSAIC.

District Court, E. D. New York. March 4, 1926.

No. 6568.

Navigable waters ☞20(8)—Towage ☞11(7)—Bridge operator held solely at fault in collision of lighter in tow with bridge.

Operator of drawbridge, and not tug, *held* at fault in collision of lighter with bridge.

Decree affirmed 21 F.(2d) 81.

Macklin, Brown & Van Wyck, of New York City, for libelant.

Foley & Martin, of New York City, for claimant.

Leo J. Curren, of New York City, for respondent impleaded.

CAMPBELL, District Judge. The lighter Columbia, owned by the libelant, was lying light at Marshall's dock on the Kearney side of the Passaic river, about 500 feet above the so-called annex bridge, operated by the Erie Railroad Company, shortly after 7 o'clock a. m. on January 19, 1924, when the steam tug Passaic took her in tow on two short lines. Before placing her lines on the Columbia, the Passaic blew the usual signal for the bridge to open.

The Passaic, with the Columbia in tow, went up the river away from the bridge, rounded to toward the Newark side, and gave her second signal to open the bridge when about 550 feet from the bridge. The bridge tender almost immediately answered the second signal with the usual signal that the bridge would open, commenced opening the bridge, and gave no other signals. From this point on there is a sharp conflict in the evidence.

It appears from the evidence that the draw of this bridge, which is a jackknife draw, is not always raised to its full height, as the man in charge of the bridge exercises his judgment in determining the height to which he will raise the draw, depending on the kind of vessel intending to pass through. It also appears from the testimony that tugs do not always wait for the draw to be raised to its full height.

The real question before us, however, is: Had the draw of the bridge stopped moving before the Passaic entered the draw, or was the draw still being raised at the time the Passaic entered the draw, and through what part of the draw did the Passaic and the Columbia pass?

The lighter, which was 85 feet long and 30 feet beam, was about 30 feet behind the tug and should have been under good control. Her mast was about 75 feet high, as is customary on all derricks going up the Passaic. The draw was at a slant, not straight up, when the Passaic entered the draw; but I am convinced that the bridge engineer had stopped opening it at that time.

The captain of the Columbia says (and I believe him) that they passed through the center of the draw, and that the Columbia was not near either abutment. This destroys

21 F.(2d)—6

the force of the story told by the bridge engineer as to the way in which the Passaic and the Columbia passed through the draw. If the bridge engineer is not in error, I do not see why he failed to sound an alarm when he saw the Passaic with her tow coming through the bridge before he had completed raising the draw.

Furthermore, if it took but 1½ minutes to fully open the draw, it would seem that there was ample time for the bridge engineer to accomplish the opening before the Passaic entered the draw, if he started before the Passaic with the Columbia had rounded to. I therefore find the Columbia, which was without motive power, without fault.

I also find that the draw had stopped opening before the Passaic entered the draw, and that the Passaic was without blame. I find the Erie Railroad Company, the operator of the bridge, solely at fault.

A decree may be entered in favor of the libelant against the respondent impleaded, Erie Railroad Company, for damages, with costs, and with the usual order of reference, and in favor of the claimant, Newark & New York Towboat Company, dismissing the libel, but without costs.